400 A.2d 588

**COMMONWEALTH of Pennsylvania**

v.

**Alan WARIN, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1978.

Decided March 16, 1979.

Reargument Denied May 4, 1979.

John C. Bonner, McTighe, Mullaney, Weiss, Bonner, Stewart & O'Neill, Norristown, for appellant.

Eric J. Cox, Asst. Dist. Atty., Ross Weiss, 1st Asst. Dist. Atty., James A. Cunningham, Ronald T. Williamson, Asst. Dist. Attys., Norristown, for appellee.

Before EAGEN, C. J., and O'BRIEN, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal from a judgment of sentence entered upon a jury verdict finding appellant guilty of murder of the

third degree.[1]  See 18 Pa.C.S.A. § 2502(c) (Supp.1978–79). The dispositive issue before this Court is the propriety of the trial court's refusal to instruct the jury on the offense of involuntary manslaughter, *id.* § 2504 (1973), where the only homicide indictments were for murder and voluntary manslaughter.  Because we conclude that the trial court erred in refusing to so instruct the jury, we reverse the judgment of sentence entered upon the third degree murder verdict and order a new trial.

The relevant facts are as follows:  At the time of the incident, November 8, 1975, appellant was living with his parents in Norristown, Pennsylvania.  Appellant awakened late on the morning of November 8th, and came downstairs from his bedroom.  Appellant's father, George Warin, was repairing a plumbing problem in a downstairs bathroom, and upon seeing appellant, Mr. Warin began criticizing appellant for sleeping so late and not assisting Mr. Warin with household work.  A heated argument between the two ensued during which Mr. Warin struck appellant three or four times in the face with the rod to which the toilet float was attached; these blows drew blood from appellant's face, and he retaliated by striking Mr. Warin with his fists.  Mrs. Warin succeeded in breaking up the fight, and appellant went back up to his room.  Mr. Warin went outside.

Three to five minutes later, appellant came downstairs again and went outside onto the driveway where Mr. Warin was unloading some materials from the trunk of his automobile.  On his way through the breezeway, appellant picked up a metal rod.  Appellant approached his father, and as Mr. Warin turned around, appellant struck him once on the right side of the head with the rod.  Mr. Warin fell and apparently struck the back of his head on the driveway pavement. Mr. Warin was dead when police arrived a short time later. Medical testimony at trial indicated that Mr. Warin died

---

1.  This Court's jurisdiction is based upon Section 202(1) of the Appellate Court Jurisdiction Act of 1970.  17 P.S. § 211.202(1) (Supp.1978–79), superseded by 42 Pa.C.S.A. § 722(1) (1978 Pamphlet, Part I).
   Appellant was also convicted of numerous other lesser offenses. Appeals from these convictions are not now before the Court.

from a cerebral hemorrhage caused by two fractures to the skull, one at the back of the skull and one on the right side of the skull.

In cases materially similar to the one at bar, this Court has ruled that a defendant indicted for murder has a right, upon timely request, to an instruction on the offense of involuntary manslaughter. *Commonwealth v. Dussinger,* 478 Pa. 182, 386 A.2d 500 (1978); *Commonwealth v. Ford,* 474 Pa. 480, 378 A.2d 1215 (1977); *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977); *Commonwealth v. Polimeni,* 474 Pa. 430, 378 A.2d 1189 (1977). A majority of this Court has yet to agree upon the appropriate rationale underlying the right to such an instruction. See *id.* at 442, 378 A.2d at 1195 (Opinion of Pomeroy, J., finding such a right when the evidence provides a rational basis for a verdict of involuntary manslaughter); *Commonwealth v. Garcia, supra,* 474 Pa. at 465, 378 A.2d at 1207 (Opinion of Roberts, J., basing this right upon the theory that involuntary manslaughter is a lesser included offense of murder); *Commonwealth v. Polimeni, supra,* 474 Pa. at 447–48, 378 A.2d at 1198 (Concurring opinion of Manderino, J., suggesting that such an instruction properly allows the jury to exercise compassion and return a verdict of involuntary manslaughter); *Commonwealth v. Dussinger, supra,* 478 Pa. at 197–98, 386 A.2d at 507–508 (Concurring opinion of Nix, J., finding such a right only where the factual dispute centers upon an element which distinguishes murder from involuntary manslaughter). Appellant's theory of defense at trial was that he did not possess the callous disregard to constitute malice but rather the death resulted from the doing of an unlawful act in a reckless and grossly negligent manner. Therefore, it is clear that under the facts in this case that any one of the proffered rationales would support the conclusion that the trial court erred in refusing appellant's request for a jury instruction on the crime of involuntary manslaughter.[2]

2. Appellee argues that the rule announced in the *Polimeni-Garcia-Ford* trilogy should be applied only to cases in which trial commenced after October 7, 1977, the date upon which the *Polimeni,*

Accordingly, judgment of sentence is reversed, and a new trial is ordered.

EAGEN, C. J., filed a dissenting opinion in which LARSEN, J., joined.

ROBERTS, J., and POMEROY, former J., did not participate in the consideration or decision of this case.

EAGEN, Chief Justice, dissenting.

In my view a jury instruction on involuntary manslaughter is required only when the trial evidence provides a rational basis for such a verdict. *Cf. Commonwealth v. Dussinger*, 478 Pa. 182, 195, 386 A.2d 500, 506 (1978) (Pomeroy, J., concurring opinion joined by Eagen, C. J.). Clearly there is no such rational basis here.

According to the appellant's own trial testimony, he intentionally struck the blow which caused the victim's death. The fact that appellant may have acted under heat of passion does not make the crime involuntary manslaughter.

I dissent!

LARSEN, J., joins in this opinion.

*Garcia*, and *Ford* decisions were announced. Appellee's argument is premised upon the assumption that the *Polimeni-Garcia-Ford* trilogy changed prior law. This, we believe, is a false premise. These cases merely interpreted the 1972 Crimes Code, 18 Pa.C.S.A. § 101 *et seq.* (1973 & Supp.1978–79), which changed the prior practice. Therefore, since the criminal act in the instant case was controlled by the 1972 Code, there is no question presented as to retroactivity. *See Commonwealth v. Dussinger*, 478 Pa. 182, 195, 386 A.2d 500, 506 (1978).